(Reap. Dec. 8985)

LEADING FORWARDERS, INC., ET AL. <i>v.</i> UNITED STATES

Entry No. 742274, etc.

(Decided September 5, 1957)

*John D. Rode; Fred Bennett (John D. Rode* of counsel); for the plaintiffs.
*George Cochran Doub,* Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the defendant.

FORD, Judge: The six appeals listed in schedule "A," hereto attached and made a part hereof, involve the question of the proper dutiable value of certain woven silk piece goods imported from Japan during the years 1950 and 1951. In reality this is a retrial of the issue decided in *S. Shamash & Sons, Inc.* v. *United States,* Reap. Dec. 8208, modified in *United States* v. *S. Shamash & Sons, Inc.,* A. R. D. 41.

For a clearer understanding of the conditions that existed in Japan following the cessation of hostilities between the United States and Japan, I quote the following from the *Shamash* case, *supra*:

> At the trial of this case, the importer testified that he purchased the involved merchandise at the price of 70 cents per yard, and as supporting his testimony, there was admitted in evidence as exhibit 1, an offer from Maruyei Co., Inc., Osaka, Japan, to the importer herein, of the instant merchandise at a price of 70 cents per yard, but "Good Monday and Tuesday" only. This offer is dated August 14, 1950, and formed the basis for the sale and purchase of the involved merchandise, which it was agreed was exported on October 6, 1950.
>
> Counsel for the importer contends, however, that this merchandise was not purchased in the ordinary course of trade, and that, therefore, the price paid for the instant merchandise does not represent the freely offered price when sold in the ordinary course of trade. It appears from the record that there was set up in Japan an organization known as Kodan. With reference to this organization, the witness testified as follows:
>
> > A. That organization was in 1947, in July and it was started by the Government to subsidize the various silk weavers all over Japan. It is like our Government's action here in buying up the surplus potatoes. It was from these people that I was able to obtain a cheaper price than the regular market price.
>
> * * * * * * *

A. These members—let me explain to you what Kodan is so that you will understand what it is. Kodan sold during the year 1950, seven times. Now they put the goods up at auction and those goods were bought subject to a bid.

\* \* \* \* \* \* \*

A. Yes, the highest bid got the goods. These were specific lots of goods; they weren't freely offerable in the market. These options were limited for a certain period, for a day or two, and when we made our offers and purchases we did not know whether we were going to get the goods or not; it was days later before we knew we had the goods.

\* \* \* \* \* \* \*

X Q. You mean to say the purchase of this particular invoice involved here was purchased from Kodan?—A. Exactly.

X Q. And it was not a purchase from Maruyei?—A. It was Maruyei representing Shamash with Kodan. Kodan could not export themselves directly and the only way they could sell is through an exporter.

\* \* \* \* \* \* \*

A. The purchases were not in the normal course of business. They were not bought from weavers, they were bought from a government organization through these respective companies.

\* \* \* \* \* \* \*

X Q. When they gave you this offer at 70 cents for two days, it is an option to buy, it is an exclusive option to buy for two days?—A. Exactly.

X Q. It is not a limitation that they didn't offer the merchandise to anybody else?—A. I am telling the Court that that particular lot that was offered to me of 95 hundred yards that was offered to me, it was offered to nobody else except me.

\* \* \* \* \* \* \*

R. X Q. Then how come you were able to buy Kodan goods for less money?—A. We were in a favorable position, we were the second or third largest importers of silk from Japan and we were in a better position to buy them as against many other people. We were one of the first buyers from the Government on a sealed bid basis back in 1949 when there wasn't any other importer that bought them from Kodan. I am explaining why we were in a more favorable position and Kodan would receive our bids and give us the favorable position.

When the present case was called for trial, on motion of counsel for the plaintiff, the record in A. R. D. 41 was admitted in evidence as a part of the record in this case, and counsel for the respective parties then stipulated as follows:

\* \* \* That if the court finds that Kodan silks were not freely offered for sale to all purchasers then the following correctly represents the dutiable value of the merchandise at bar:

On Reappraisement 203130–A, entry 742274, 78 cents net packed, that's per yard; Reappraisement 211598–A, entry 63001, 97 cents net packed; Reappraisement 207800–A, entry 821888, 71 cents net packed; Reappraisement 223438–A, entry 07213, 78 cents net packed; Reappraisement 223968–A, entry 07323, also 78 cents net packed; Reappraisement 223969–A, entry 07324, 70 cents net packed.

Counsel for the defendant then offered and there was admitted in evidence a report dated December 23, 1955, by Willard S. Kingsbury, treasury representative, which was marked defendant's exhibit A.

On page 2 of defendant's exhibit A, we find the following statement by a Mr. Banno:

* * * By early 1950 Kodan had accumulated approximately 50,000,000 yards of these materials which were to be liquidated. Under directions by SCAP and the Japanese Government, Kodan was directed early in 1950 to liquidate its stock.

On page 3 of said exhibit A, we find the following:

About August 1947 purchasers were allowed to buy either from Kodan or deal directly with the weavers. Where the foreign buyer dealt directly with the weavers he was required to issue a Letter of Credit in the name of Kodan after which Kodan would handle the entire transaction for the exporter who received a flat six per cent commission on the order so placed. These orders were in all instances placed by the American Importer through a Japanese selling agent and were very profitable to the Japanese agent as he had only to place the order with Kodan who was held responsible to fulfil the contract and guarantee the quality of the goods.

* * * * * * *

Mr. Nishiwaki stated that to the best of his recollection Kodan disposed of approximately 40,000,000 yards of silk goods of various kinds during the period of liquidation in 1950. * * *

Mr. Nishiwaki further stated that Kodan goods where [sic] freely offered to the highest bidder without regard to nationality. In the great majority of cases, American buyers purchased through Japanese companies as it was difficult for foreign buyers to deal directly with Kodan. To the best of his recollection, Kodan had four or five open bid sales to liquidate their inventory. * * *.

Said exhibit A contains other statements indicating that Kodan goods were inferior in quality to fresh woven goods. If, as stated above, orders for Kodan goods were in all instances placed by the American importer through a Japanese selling agent, and, if it was difficult for foreign buyers to deal directly with Kodan, how can it be said that this merchandise was freely offered for sale by Kodan to all purchasers in the ordinary course of trade within the framework of section 402 of the Tariff Act of 1930?

I find nothing in said exhibit A which in any manner tends to support the position of the defendant herein that the subject merchandise was freely offered for sale by Kodan within the framework of said section 402. It is therefore clear that said exhibit A adds nothing to defendant's case that was not present in the former case.

According to the report marked defendant's exhibit A, the majority of the persons interrogated stated that the Kodan merchandise was freely offered for sale. These statements are completely refuted by the evidence in the previous case, which evidence is now a part of the record in this case.

In addition to the evidence in the previous case, counsel for the plaintiffs also offered the testimony of two witnesses at the trial of this case, which testimony definitely outweighs any statements contained in said exhibit A to the effect that Kodan goods were of an inferior quality to freshly woven goods and that they were freely offered for sale to all those who wished to buy. Plaintiff's witness, Jacobson, testified regarding the manner in which the subject merchandise and similar merchandise was offered to his company, Cohn Hall Marx Division of United Merchants and Manufacturers, as follows:

A. The conditions under which they offered was the fact that we were advised that Kodan, which was an agency of the Japanese Government, was prepared at various times to release various quantities of various types of merchandise which they had gathered under their method of operation. And we had to purchase those through a Japanese buyer. We could not purchase those direct; they had to be purchased through a Japanese company.

\* \* \* \* \* \* \*

Q. When you are looking for merchandise do you put in an order for some or ask to buy some? How do you do it?—A. What I do is I would ask to purchase a certain quantity of merchandise according to the specifications of what I wanted, for the delivery that I wanted.

Q. You set the quantity you want to buy?—A. I set the quantity and the time of delivery, that's correct.

Q. And the quality or what type of goods you want?—A. All the specifications.

Q. Is that the way you bought these Kodan goods?—A. No.

\* \* \* \* \* \* \*

Q. Did they tell you what they had to comply with in order to make this purchase on your behalf?

\*. \* \* \* \* \* \*

A. Yes; they did. They told us the amount of merchandise that was being offered and the fact that it had to be taken at a certain time. We were told those things.

\* \* \* \* \* \* \*

Q. Were these conditions the type of conditions that existed when you purchased silk goods from Japan in the ordinary course of your business?—A. No; they were not.

Regarding the quality of the subject merchandise, the witness testified as follows:

Q. Now, you saw the goods that were covered by these four importations?—A. Yes.

Q. How did they compare with other silk goods that you have purchased from Japan as to appearance, let's say?—A. Appearance was exactly the same.

Q. Could you tell any difference visually between the goods the subject of this importation and so-called fresh-woven goods?—A. I don't think anybody in the world could.

Q. Would you say that the goods covered by these cases were of good quality?—A. They were of definitely satisfactory quality.

Q. In your opinion would they appear to have been made or manufactured in the same manner?—A. They would appear to have been, yes.

The weight of the evidence in the record before me makes it abundantly clear that Kodan silks were not freely offered for sale to all purchasers within the provisions of section 402 of the Tariff Act of 1930. Therefore, in accordance with the stipulation hereinbefore quoted, I find the proper dutiable export value of the subject merchandise to be as follows:

Reappraisement 203130–A_____ .78 cents per yard, net packed.
 " 211598–A_____ 97 cents per yard, net packed.
 " 207800–A_____ 71 cents per yard, net packed.
 " 223438–A_____ 78 cents per yard, net packed.
 " 223968–A_____ 78 cents per yard, net packed.
 " 223969–A_____ 70 cents per yard, net packed.

Judgment will be rendered accordingly.